IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS

DAVID RENARD, individually
and on behalf of others similarly situated,

    Plaintiffs,

v.                                          Civil Action Number:

UNION PACIFIC RAILROAD COMPANY,

    Defendant.

## COMPLAINT- CLASS ACTION

## INTRODUCTION

1. Union Pacific prohibits employees from taking certain medications. It does not matter whether the employees are on or off duty. It does not matter whether the medications affect the employees' abilities to do their jobs. If a medication is on Union Pacific's banned substance list, employees cannot take the medication, period.

2. Union Pacific policy has resulted in disabled employees having to chose between the medications that help them manage their disabilities and their jobs. This is not a choice that someone should have to make. It is not a choice that the law allows employers to force upon their employees.

3. This dispute arises under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 12101 *et seq.*, which "was passed by large majorities in both Houses of Congress after decades of deliberation and investigation into the need for comprehensive legislation to address discrimination against persons with disabilities." *Tennessee v. Lane*, 541 U.S. 509, 516 (2004). As Congress found, "overprotective rules and policies" and "exclusionary qualification standards and criteria," unfairly discriminate against disabled Americans and deprive these individuals of "equality of opportunity, full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101(a)(5), (7). This case concerns precisely such unfair, discriminatory, and overprotective rules and policies.

4. The ADA broadly prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The phrase "discriminate against a qualified individual on the basis of disability" embraces both plain and technical meanings. At the most basic level, an employer discriminates when it takes an "adverse employment action because of [an employee's] disability." *Furnish v. SVI Sys.,Inc.*, 270 F.3d 445, 448 (7th Cir. 2001). But the ADA also specifically defines "discriminate against a qualified individual on the basis of disability" to include: "limiting, segregating, or classifying a[n]…employee in a way that adversely affects the opportunitiesor status of such…employee because of the disability of such…employee"; "utilizing standards…that have the effect of discrimination on the basis of disability"; or "using qualification standards, employment tests or other selection criteria that screen out or tendto screen out an individual with a disability or a class of individuals with disabilities." 42 U.S.C. § 12112(b)(1), (3), (6). The ADA further defines discrimination to include "not making reasonable accommodations to the known physical…limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A).

5. David Renard's experience is emblematic of Union Pacific's discriminatory conduct. Renard was prescribed diazepam and valium to manage his service-related PTSD. Renard did not take valium within eight hours of work, and the diazepam—if anything—positively affected his work performance. Yet, because they are on Union Pacific's banned-substance list, Union Pacific effectively terminated Renard.

6. Renard is hardly alone in facing such discriminatory treatment. Union Pacific discriminates broadly against its employees who control their disabilities with medication. Its policies are rigid and uniformly applied: *Any* employee who takes a medication on its banned-substance list cannot work for it.

7. On the merits, liability is clear: Union Pacific discriminated against Renard on the

basis of disability when it removed him from service on the basis of Renard taking medications on its banned-substance list. The policy "limit[s]" and "classif[ies]" hearing-impaired employees, including Renard, "in a way that adversely affects theopportunities or status of such…employee because of the disability of such…employee," 42 U.S.C. § 12112(b)(1), "utilize[es] standards…that have the effect of discrimination on the basis of disability," *id.* § 12112(b)(3), and "us[es] qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities," *id.* § 12112(b)(6). For these reasons, Union Pacific has violated the ADA in every instance where it has prohibited an employee from taking his or her medication without performing an individualized analysis of whether the employee's medication prevents the employee from doing his or her job.

8. Renard brings this case to put a stop to Union Pacific's discriminatory policies.

## **PARTIES**

9. Renard is an individual residing in Allen, Texas.

10. Defendant Union Pacific is a railroad operating in 23 states across the western two-thirds of the United States. It is headquartered in Omaha, Nebraska. It employs more than 35,000 people.

## **JURISDICTION**

11. This Court has original jurisdiction over Renard's ADA claims under 28 U.S.C. § 1331.

12. Venue is proper under 28 U.S.C. § 1391 because Renard resided in theDistrict when he worked for Union Pacific, Union Pacific operates in the District, and theillegal conduct occurred in the District.

# BACKGROUND

**RENARD'S EMPLOYMENT**

13. Union Pacific hired Renard in 2011.

14. Renard was an engineer

15. In early to mid-2017, Renard's doctor prescribed him diazepam for his service-related PTSD.

16. On August 1, 2017, Union Pacific removed Renard from service because of his prescription.

17. Union Pacific did so despite Renard having had no issue performing the essential functions of his job while he was on diazepam.

18. Renard's doctor has informed Union Pacific that Renard cannot only safely do his job while on diazepam but also that he can do his job better while on it.

19. To appease Union Pacific, with the approval of his doctor, Renard began taking his medication eight hours or more before he reported for work, which he told Union Pacific.

20. Union Pacific has nevertheless refused to return Renard to service.

**UNION PACIFIC'S POLICY**

21. Union Pacific categorically prohibits the use of certain medications.

22. It does not matter whether the employees take the medication when off duty.

23. Union Pacific does not do any analysis regarding whether any given employee's medication prevents the employee from safely doing his or her job.

24. If an employee takes a medication on the prohibited-substance list, he or she is out of work, period.

# CLASS ACTION ALLEGATIONS

25. Renard brings ADA claims pursuant to Federal Rule of CivilProcedure 23, seeking

back pay, monetary relief, other compensatory relief, and injunctive and declaratory relief on behalf of himself and the following class:

> Individuals who were the subjects of one or more adverse actions by Union Pacific because of their medications.

26. Class treatment is appropriate because the class is so numerous that joinder of all members is impracticable. The exact number within the class is unknown but may be determined from records maintained by Union Pacific.

27. Class treatment is appropriate because there are questions of law or fact common to the class, including but not limited to:

   a. Whether Union Pacific discriminated against Class Members on the basis of their disabilities;

   b. Whether Union Pacific has a uniform policy of prohibiting employees from taking certain medications without regard to when they take their medications and/or whether the medications prevent them from performing their jobs' essential functions;

   c. Whether Union Pacific's policy of prohibiting employees from taking certain medications without regard to when they take their medications and/or whether the medications prevent them from performing their jobs' essential functions amounts to discrimination on the basis of disability;

   d. Whether monetary damages, injunctive relief, and other equitable remedies for the class are warranted; and

   e. Whether punitive damages are warranted.

28. Union Pacific is expected to raise additional common defenses to the claims.

29. Class treatment is appropriate because Renard's claims are typical of the claims of the class, and Renard will fairly and adequately protect the interests of the class.

30. Renard has retained competent counsel who are experienced in litigating class actions and will effectively represent the interests of the class.

31. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or

varying adjudications with respect to individual class members that wouldestablish incompatible standards of conduct for Union Pacific, and/or would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

32. Class treatment is also appropriate under Federal Rule of Civil Procedure 23(b)(2) because Union Pacific has acted or refused to act on grounds that apply generallyto the class, so that final injunctive relief or corresponding declaratory relief is appropriaterespecting the class as a whole.

33. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3)because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and because a class action is superior toother available methods for the fair and efficient adjudication of this controversy.

34. Finally, Class treatment is appropriate under Federal Rule of Civil Procedure23(c)(4) because this is a case in which class adjudication of particular issues would servethe interests of the parties and the Court.

## CAUSES OF ACTION

### COUNT I:
### VIOLATIONS OF 42 U.S.C. § 12101, *et seq.* (Brought on Behalf of the Class Defined Above)

35. The ADA "was passed by large majorities in both Houses of Congress afterdecades of deliberation and investigation into the need for comprehensive legislation to address discrimination against persons with disabilities." *Tennessee*, 541 U.S. at 516. As Congress found, "overprotective rules and policies" and "exclusionary qualification standards and criteria," unfairly discriminate against disabled Americans and deprive theseindividuals of "equality of opportunity,

full participation, independent living, and economic self-sufficiency." 42 U.S.C. § 12101(a)(5), (7).

36. The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a). A "qualified individual" is someone "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." *Id.* § 12111(8).

37. The phrase "discriminate against a qualified individual on the basis of disability" embraces both plain and technical meanings. At the most basic level, an employer discriminates when it takes an "adverse employment action because of [an employee's] disability." *Furnish*, 270 F.3d at 448. But the ADA also specifically defines "discriminate against a qualified individual on the basis of disability" to include: "limiting, segregating, or classifying a[n]…employee in a way that adversely affects the opportunities or status of such…employee because of the disability of such…employee"; "utilizing standards…that have the effect of discrimination on the basis of disability"; or "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities." 42 U.S.C. § 12112(b)(1), (3), (6). The ADA also defines discrimination to include "not making reasonable accommodations to the known physical…limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A). When an employee asks for an accommodation because of a disability, the employer "must engage with the employee in an interactive process to determine the appropriate accommodation under the circumstances." *Kauffman v. Peterson Health Care VII, LLC*, 769 F.3d 958, 963 (7th Cir.2014). Though not an independent cause of action, an employer's failure to engage in the interactive process is actionable when it prevents the identification of an appropriate accommodation for a qualified individual. *Spurling v. C&M Fine Pack, Inc.*, 739 F.3d 1055, 1059

n.1 (7th Cir. 2014).

38. Union Pacific was Renard's employer within the ADA's meaning.

39. Renard is disabled within the ADA's meaning.

40. Renard is a qualified individual within the ADA's meaning.

41. Union Pacific discriminated against Renard on the basis of disability when it removed him from service and prohibited him from working on the basis of his medication. Union Pacific's drug policy discriminates against disabled employees, including Renard, for a whole host of reasons. The policy also "limit[s]" and "classif[ies]" hearing-impaired employees, including Renard, "in a way that adversely affects the opportunities or status of such…employee because of the disability of such…employee," 42 U.S.C. § 12112(b)(1), "utilize[es] standards…that have the effect of discrimination on the basis of disability," id. § 12112(b)(3), and "us[es] qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities," id. § 12112(b)(6). For these reasons, Union Pacific has violated the ADA in every instance where it has taken an adverse action against any employee, including Renard, on the basis of the employee's medication.

42. Because Union Pacific violated 42 U.S.C. § 12112, Renard has suffered and will continue to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000. Renard is also entitled to attorneys' fees and costs incurred in connection with these claims.

43. Union Pacific committed the above-alleged facts with reckless disregard or deliberate disregard for Renard's rights. As a result, Renard is entitled to punitive damages.

# PRAYER FOR RELIEF

WHEREFORE, Renard prays for relief as follows:

A. Renard requests that the Court find Union Pacific acted in direct violation of the ADA;

B. Certify a class of similarly situated employees, appoint Renard as the class representative, and appoint Renard's attorneys as class counsel;

C. Renard further requests that the Court order Union Pacific to:

- reinstate him and other class members and enter an injunction prohibiting Union Pacific from enforcing its discriminatory policies;

- pay to him and other class members an award of compensatory damages, including backpay and front pay, arising from loss of income and benefits in an amount to be determined by the trier of fact;

- pay to him and other class members an award for garden-variety emotional distress in an amount in excess of $75,000.00;

- pay to him and other class members an award for costs (including litigation and expert costs), disbursements, and attorneys' fees; and

- pay to him and other class members an award for $300,000 for punitive damages for each violation of the ADA.

D. Renard further requests that the Court order judgment against Union Pacific for all other relief available under the ADA and such other relief as the Court deems just and equitable.

# JURY DEMAND

Renard demands a trial by jury of all issues triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

**A JURY TRIAL IS DEMANDED.**

Respectfully submitted,

PAUL LAW OFFICES

    /Gregory G. Paul
GREGORY G. PAUL
TX ID Number: 24054974
100 First Avenue, Suite 1010
Pittsburgh, PA 15222
(412) 259-8375 (telephone)
(888) 822-9421 (facsimile)
gregpaul@morgan-paul.com


Mark Underwood
Underwood Law Office
2530 West White Avenue, Suite 200
McKinney, TX 75071
972-480-6337 (telephone)
800-991-4384 (facsimile)

Nick Thompson
*Applicant for Pro Hac Vice*
Casey Jones Law LLC
3520 Cherryvale Ave., St. 83
Appleton, WI 54913
(757) 477-0991
nthompson@caseyjones.law


*Attorneys for Plaintiff*

Dated: July 27, 2021